May it please the Court, my name is Dominic Cappecci. I represent the petitioner in this matter, Saeed Samsafi. I believe that this case is a question of whether or not the immigration judge correctly applied the legal standard in reference to deferral of removal, which is under ACFR Section 1208.17a of the Code of Federal Regulations. As the Court may know from reading our briefs, there was one question about whether or not this Court had jurisdiction in this matter. And I believe there are at least four reasons that the Court does have jurisdiction in this matter, and I will quickly go over that if the Court is interested in determining that question. According to Morales v. Gonzalez, which is 478 F. 3rd 972, quote, when the immigration judge does not rely on the alien's conviction denying cat relief or convention against torture relief, and instead denies relief on the merits, none of the jurisdiction stripping provisions, including 8 U.S.C. Section 12282c, which is the criminal jurisdiction stripping provisions, apply to divest this Court of jurisdiction. Is there any situation in which an I.J. could deny cat relief based on the crime, the enumerated crime that was committed by the alien? I mean, is that really relevant? I think that's a good question. And so far as I agree that with deferral of removal, there is no conviction that can disqualify a respondent or actually the petitioner, an alien, from that form of relief from removal. So based on the precedent that this Court has established under Morales, Una Cuella, and Matt Suk, as well as Ornelas Chavez, based on the interpretation that under that form of relief from removal, there's no crime that can disqualify the individual. And it's not discretionary either, is it? Right, it's not. And that's why Matt Suk states that cat is nondiscretionary and we can review it. So 1222a to b, which strips jurisdiction of discretionary forms of relief, does not apply either. So under our precedent, would you say we always have jurisdiction over cat relief? Not over all forms of cat relief. There's another kind called withholding of removal, which is at 128.16c. So that, you could theoretically be disqualified that due to a particularly serious crime, and then the Court couldn't review whether or not a conviction was a particularly serious crime, and then therefore the Court may not necessarily be able to review that form of cat relief, which is called withholding of removal, which is different than deferral of removal. Deferral of removal is if you don't qualify for asylum restriction on removal under the Act, which are based on persecution, or withholding of removal under the regs, which is based on torture for any reason. It doesn't have to be based on a protected ground. So if you're not eligible for any of those three, you still may be eligible and are eligible by regulation for deferral of removal. If you can show the two elements, it would be tortured for any reason whatsoever, and then you apply the four mandatory factors and any other factors, ad hoc factors, to see whether or not it is more likely than not you'll be tortured for any reason. Assuming we have jurisdiction, why is your client entitled to cat relief? Because that's the only issue in front of us on the merits, correct? Whether or not cat relief is proper. The real question is, yes, it is. But the real question is whether or not the immigration judge applied the correct standard of law. And that's why I believe that this Court has jurisdiction on top of the fact that there are no jurisdiction stripping bars, because according to Ramadan, it's a question of mixed question of law and fact. You know, here's the law. Did we look at the right facts to apply the law to them? Yes. I'm asking you the question, what is it in this record that should have compelled the IJ to grant cat relief? Thank you, Your Honor. I think the first question is misconstrued or misunderstood by the honorable immigration judge. And then the board just simply says, I agree with the immigration judge, without further analysis. And the judge says in his written decision on page 124, 124 of the certified administrative record, in reviewing the record, there is an absence of evidence showing that the government's attitude or treatment towards expatriates from America returning to Afghanistan. So it's like the judge is saying, it's almost as if the judge is applying an asylum or restriction standard, like you have to be in a certain protected ground to qualify for the relief or for me to consider whether or not you should get the form of relief. But the question is not whether or not he's an expatriate or a westernized Muslim. The question is whether this person will be tortured for any reason. And that's useful. Where is this in the record? I'm sorry, what are you reading from? That's 124, Your Honor. 124 what? I mean, I'm just. Of the certified administrative record. Page 124. I didn't bring that with me. Okay. I will just. It's also page 8 and 9 of the written decision. Okay. I now have the. And where is that? I've got the page. First sentence, third paragraph. So it's as if the court, the immigration judge is saying, you know, I can't see that he's in a category that's suffering a pattern of practice. But the question is whether or not he himself will be tortured. And I think there's evidence in the record to that effect. He's found credible, so we have to assume his testimony is true. And he says that he's going to be specifically targeted by local police force and his neighbors, the people, the community, because of several reasons. So it's going to be obvious he's different. They're going to want to know who he is because they need to protect themselves, because they're very leery about their neighbors, according, using his word, the neighbors. And he will definitely be targeted, or at least they'll want to know who is this person. When they find out who he is, this is what he thinks is going to happen. He says, here's how he's going to be discovered. I have problems speaking the language they speak. I have an accent. I cannot read. I cannot write. They will say I'm an American and I'm rich, which I'm not. So they could arrest me and target me and abuse me so that they can ask for a bribe, which I cannot come up with. I gather he's Pashtun, does not speak Pashto, but rather to the degree he speaks an Afghani language, it's Farsi that he speaks. He speaks Dari Farsi somewhat. He doesn't speak, read or write his own language. He's been here for 23 years. And he doesn't read or write Dari Farsi either. And he has an accent. He carries himself like an American. So he's going to appear and just his demeanor to be different. He's not going to have a job, presumably. It's going to be obvious. It would be as if somebody walked in here and they were from Germany and they couldn't speak English. They're obviously not born here. They're not American. He's going to stand out. So the standing out seems to me quite clearly so. Okay. How strong is the evidence that that will result in torture? Well, I think that the court should have considered the 2005 country condition report at 347 of the record. Actually, that's not the actual country condition report. It's a synopsis that we typed up as to what's in the country condition report. So we won't have to dig further down the record to actually read it. But it says, that says, if I can find it, that prisoners were reportedly beaten, tortured, and denied adequate food. Human rights groups and detainees reported local police extort bribes from civilians in exchange for their release from prison or to avoid arrest. Now, why that bothers me is that that's happening. If they can get money from you or think they will, they'll take you into custody. They'll harm you. And he's saying the Army people, especially if they see you're from a westernized country such as myself, being from the United States, they'll automatically think you're rich, automatically set you up, target you, arrest you for no particular reason, no legal reason, and harm you and even kill you. So he's saying he's going to stand out. It's going to get back to local police. They're going to haul him in and try to bribe him because they think he's rich. And when he can't come up with the money, what else are they going to do but try to extract it from him using those methods that are in the Department of State country condition report of 2005. So that is what I think the judge should have focused on, not whether or not he fits in a category of westernized or Americanized or westernized Muslims that are subject to a pattern of practice. Because that really is about asylum and restriction and being one of the five enumerated grounds that those two forms of relief protect, whereas the Torture Commission just says if you're going to be tortured for any reason, we protect you. Now, you've used all your time. Let's hear from the government, but we'll make sure you have time to respond.  I apologize for not releasing it. No, no apology necessary. Good morning, Your Honors. I'm Erica Miles for the Attorney General. The government respectfully maintains that this court lacks jurisdiction over the consolidated petition for review. Safi has had a full and fair opportunity to present his case before the agency, and there's no dispute before this court that he was found removable on the basis of having been convicted of an aggravated felony and a controlled substance offense. And there's also no dispute before this court that he was properly found barred from asylum and withholding of removal, both under the Immigration and Nationality Act and under the Convention Against Torture. The agency did not reach the merits on any of these forms of relief. Therefore, the only issues he's presented is the denial of his deferral of removal application and the denial of his motion to reopen. Therefore, this court's decision in Ruiz-Morales, as applied in the context of the Real ID Act amendments, governs to deprive this court of jurisdiction. Safi was unambiguously removed based only on his aggravated felony and particularly serious crime convictions. The IJ explicitly stated this, and there were no alternate grounds of removal charged or at issue in this case. This alone distinguishes his case from Morales and the Unuakalulu case. Moreover, there is an obvious conflict between Ruiz-Morales and the Morales case. This is so because in Ruiz-Morales, the court looked at the standard that the petitioner in that case was found removable based only on these jurisdictionally barred offenses, and therefore the court found that it had no jurisdiction whatsoever over any of his applications, including CAT. And that did encompass both withholding of removal and deferral of removal. That's the implication of Ruiz-Morales, but there was no express holding, right? The express holding was because he was found removed based on those offenses articulated in the jurisdictional bar clause. It had no jurisdiction over any of those applications for relief or protection. And that application, the CAT application includes both withholding of removal and deferral of removal. The agency must consider both. Therefore, Ruiz-Morales governs here, and there's a conflict, whereas in the Morales case, that wasn't considered. This distinction between withholding of removal and deferral of removal wasn't even a consideration. And whether or not the agency meets the merits didn't need to be decided under Ruiz-Morales' analysis. In Morales, making this distinction about reaching the merits creates this conflict, because the agency always has to reach the merits in deferral. There's no criminal bar. There's no bar whatsoever to ever applying for this. It's a mandatory form of relief because it's a very limited form of protection. Assuming, because the time is short. Sure. Assuming for purposes of the argument now that we do have jurisdiction, why is he not entitled to relief under CAT? It's pretty obvious that he's correct, that he will stand out. It's pretty obvious that he will, it will be apparent to anyone in Afghanistan, that he has spent a good portion of his life in the United States. Sure. And he's testified that while he's Muslim, he's not particularly observant. And he has said that based on this, he rather expects to be badly treated. Yes. Tell us why. He has not met his standard. Why he has not met the CAT standard. He is, the CAT standard is he needs to establish, it is his burden of proof to establish that he more likely than not would be tortured with the consent or acquiescence of the Afghanistan government. First, even though he's basing the fact that he will be targeted for torture because of certain characteristics that have already been discussed. Just because he'd be identified, he has pointed to no evidence in the record whatsoever, and this is his burden, to show that even if he's identified as having any of these characteristics, that that would subject him to torture. He hasn't, there's not a single piece of evidence in the record saying that people who are more westernized or Muslims who lack religious fervor will not only be identified but will be tortured for that position. And in fact, there's contrary evidence. Asylees who have returned after many years, there's evidence that maybe they can't find housing or get proper paperwork. There's no evidence that people who have returned after many years and perhaps are westernized have been tortured. Likewise, for people, he's declared that he ascribes himself to the Sunni faith, which is the majority religion. And there's no, there's no prohibition against being, lacking, against not being a certain degree of religious. It's only for blasphemy. And there's no evidence that he would be considered blasphemous. So that's just for the torture element. Keep further. He cited to nothing, nothing in the report. And I'm citing, I am right now, these facts that I'm discussing are in the 2005 country report. That asylees who return, there's nothing saying that they'd be tortured whatsoever. And in the 2005 report, there's nothing saying that a religious Sunni Muslim who lacks religious fervor would be tortured. The other element is that he hasn't shown that he would be tortured by the government or with the consent or acquiescence of the Afghan government. He's of Pashtun ethnicity. He hails from Kabul. And he's admitted that President Karzai is Pashtun. And in the 2005 country report, it states that Karzai has been criticized for being favorable to Pashtuns, people of Pashtun ethnicity. So that even contradicts his position. So not only has he not shown that he would most likely suffer harm amounting to torture, he hasn't shown more likely than not that the government would either be involved or acquiesce to it. Let me ask you this. Does he have any family members in Afghanistan who might be able to protect him in the event that he gets into the sort of trouble that he says he anticipates? He has testified that he does not have any family members there. But, again, that's not the standard here. Is there a chance? Is it likely? Excuse me. We'll do better if you talk than I talk. Sure. And are all his family members in this country? I don't know if all are in this country. But I don't believe he has any family members in Afghanistan. I see. I was quite taken by his testimony in front of the IAJ by his saying, I brought great shame upon myself and upon my family by my drug use, by my drug sales to finance my drug use, by my alcohol problems. But I've been clean since 2003. Do we have any evidence that suggests that he's not been clean since 2003? There's nothing in the record suggesting either way. And that's not an issue in this case. I didn't ask you that.  I don't think it's come up, so I don't think there's any evidence in the record. And the government has no evidence or introduced no evidence to that effect? About his conduct since 2003, no. Correct. Yeah. In summation, the government would contend or request that this Court deny the consolidated petition for review, dismiss it first for lack of jurisdiction. Alternatively, on the grounds I just discussed, deny it because he has not met his burden of proof for demonstrating that he would suffer harm, more likely than not suffer harm amounting to torture, much less with the consent or acquiescence of the Afghan government. Is it a discretionary matter with the government whether to institute removal proceedings against this man? No, it's not. He's an aggravated felon, so he's mandatorily detained and must be they must initiate removal proceedings. There's a discretionary element at the close and finding of removability, which is outside of removal proceedings context. Homeland Security has a very limited form of discretionary ability to sort of, they call it deferred action. And after removal proceedings have been concluded, fully adjudicated, an attorney can request Homeland Security to defer action on the order of removal. But again, that's completely outside of the scope of immigration removal proceedings. But there is a mechanism that Homeland Security can employ if they so determine to exercise that discretion. Is there any chance that that might happen in this case? There has been no discussion because they first wait for the outcome of the immigration removal and adjudication on the applications for relief and protection. So they don't consider that until the very end. Thank you very much. I'll try to make this very brief, Your Honor. Say what you need to say. Okay. Thank you, Your Honor. First of all, the government has unfettered prosecutorial discretion whether or not to put him into removal proceedings. I have innumerable cases of people who are removable that have not been put into proceedings or have not been put into mandatory detention. It depends on the policy of the time. Is he detained at this moment? He is. And actually this Court granted my motion to expedite based on the fact he's been in jail for quite some time. Quite some time meaning how long? Two years. And part of that was not in Department of Homeland Security custody. Part of that was before and when he was in criminal custody. But since I can't remember the exact date, he's been in jail for quite some time. If he were to succeed and the Department of Homeland Security were not able to enforce an order of removal, he would be mandatorily detained for 90 more days, and then the government would be required by regulation to see whether or not he's a flight risk or a danger to the community. If he's not, then he will be released unless and until Afghanistan becomes safe for him, and then they would probably terminate their grant of deferral and send him back to Afghanistan, if that ever happens in 20 years or tomorrow. But I wanted also to say this is not about acquiescence. This is about the local police force. I also would like to note that even in Parliament, and I did cite the record, and I didn't quote the actual actually the quote that I did make was a quote from the 2005 Country Reports on Human Rights regarding how the local officials may try to bribe him and then do extreme measures to, you know, obtain the funds. And also in that article, there's evidence that Mr. Farsai could not protect him. He's even having non-Afghanis protect himself, and he's appointed a well-known individual, Datsum, I believe, to be the military commander. And also this article does say that I should say Human Rights Watch Afghanistan 2005, over half the members of the new Parliament are linked to armed groups that have records of past human rights violations. So I think this is directly the government, not just the people of Afghanistan. The last thing I'll say is that this is not just about blasphemy. It does, even the court, the immigration judge on page 125 says only apostasy is prohibited, not the lack of religious fervor. And he, you know, apostasy is the rejection of a political belief or the full rejection of a religious belief, and he does that. I mean, if, for example, if Catholics and Baptists are both Christian, I think a Baptist is going to fully reject going to confession to fulfill his religious duties and get to heaven. And just because he's Muslim doesn't mean he doesn't reject Islamic fundamentalist beliefs as a political position where they enforce it through the Department of Protection Against Vice and Promotion of Virtue, but also as a religious belief where he says, I believe my religious belief should be between me and my God of choice. I honestly believe it's no one else's business, and I don't think it's necessary for an individual in general, including myself, to be forced to dress certain ways, go to the mosque five times a day, and grow a long beard in order for an individual to prove that he or she is a Muslim. So his way of doing things rejects that form of Islam in Afghanistan. And the judge acknowledges that by saying apostasy is prohibited. So he's saying if that exists, then that's something I should consider, and I think the testimony which is found credible is a form of apostasy. Also, the judge relied on the fact that the government would not be interested in him or is not aware of him, and I think that he will become aware of him. Okay. Thank you very much. Thank you, Your Honor. In the case of Safi versus the court. Could I ask you? I'm sorry. I'm sorry. Judge Noonan had questions. I should have asked. I'll ask you what I asked the other counsel. Did the court ask you to take this case, or did you? No. I was retained by the Safi family. Okay. Fine. I just thought I wanted to get the origin. That's all.  It was after the immigration judge. And actually, I believe after the denial of the Board of Immigration Appeals, too. It was around that time with the Board. I'm not sure if I did the appeal and the motion or just the motion. Well, it's always nice when they have lawyers, and that's good. What was that, Your Honor? It's always good when the petitioners have lawyers. Oh, yes. Yes. Thank you. Thank you, Your Honor. And thank you very much for your helpful arguments. Thank you. The case of Safi versus McKasey is now submitted for decision. That concludes our oral argument calendar for this morning, and we are now in adjournment. All right. Thank you, Your Honor. Thank you.
judges: Noonan, Fletcher, Ikuta